UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHIRLEY A. HOLLON,  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>MICHAEL ASTRUE,  )<br>Commissioner of Social Security,  )<br>    Defendant.  ) | Civil Action No. 3:10-cv-0672<br>Judge Nixon/Brown |

To:   The Honorable John T. Nixon, Senior Judge

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income (SSI), as provided under Title XVI of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Administrative Record and Defendant's Response.  (Docket Entries 7, 12).  The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr.").  (Docket Entry 6).  For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

**I.  INTRODUCTION**

Plaintiff first filed for Social Security Income ("SSI") on March 13, 2006.  (Tr. 14). Plaintiff's claim was denied initially and on reconsideration. *Id.*  She requested a hearing before the ALJ, which was held on August 26, 2008, before ALJ John Daughtry.  (Tr. 23-50).  The ALJ issued an unfavorable decision on September 3, 2008.  (Tr. 14-22).

1

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 14, 2007, the amended alleged onset date of disability (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease (bronchitis, asthma); degenerative joint disease/osteoarthritis (knees); obesity; migraine headaches (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) which includes the ability to lift and/or carry no more than 10 pounds; stand and/or walk for a total of less than 6 hours; sit up to 6 hours in an 8 hour workday with normal breaks; avoid climbing and concentrated exposure to temperature extremes (heat/cold), wetness, humidity, and airborne contaminants (fumes, odors, poor ventilation); avoid hazards.

5. The claimant has no past relevant work (20 CFR 416.965).

6. Born on November 9, 1958, the claimant was 48 years old on May 14, 2007, which is defined as a younger individual aged 45-49 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 13, 2006, the date the application was filed (20 CFR 416.920(g)).

The Appeals Council denied Plaintiff's request for review on June 19, 2010. (Tr. 1-4).

This action was timely filed on July 20, 2010. (Docket Entry 1).

## II.  REVIEW OF THE RECORD

Plaintiff was born on November 9, 1958, making her 49 years old as of the date of the ALJ's opinion.  (Tr. 27).  She has a ninth-grade education and never obtained a graduate equivalency diploma.  (Tr. 29).  Plaintiff last worked in 1994.  (Tr. 32).

On February 18, 2006, Plaintiff went to the emergency room at Tennessee Christian Medical Center, complaining of chest pain, cough, and difficulty in breathing.  (Tr. 120).  She was admitted, diagnosed with chronic obstructive pulmonary disease exacerbation, and prescribed Albuterol and Atrovent nebulizers.  *Id*.  She was given a chest x-ray, which showed a larger cardiac silhouette but no other significant changes from x-rays obtained on August 25, 2005.  (Tr. 124).  She was discharged on the same day.  (Tr. 122).

Plaintiff saw Dr. Lou Ponce for the first time on February 22, 2006, for a recheck on her bronchitis.  (Tr. 134).  Dr. Ponce noted Plaintiff was seen in the ER in the previous week for her bronchitis.  *Id*.  Plaintiff stated she was feeling better but was still smoking a pack of cigarettes per day.  *Id*.  Dr. Ponce advised Plaintiff to stop smoking and gave her exercises to strengthen her back.  *Id*.

Dr. Ponce treated Plaintiff again on March 22, 2006, for her complaints of upper back pain and shoulder pain.  (Tr. 133).  He noted she smoked one-half pack of cigarettes per day.  *Id*.  Dr. Ponce continued Plaintiff's medications and instructed her to return in one month for a follow-up exam.  *Id*.

On March 29, 2006, Plaintiff completed a Pain and Daily Activities Questionnaire.  (Tr. 95-99).  She indicated that she has had pain through her chest and back since January 2005 due to her emphysema.  (Tr. 95).  The pain is caused by any exertion and has increased over time.  (Tr.

3

95-96). She can no longer mow the lawn, do housework, or do any strenuous activities. (Tr. 96). She is able to shop for groceries weekly, but she has to rest while shopping. (Tr. 98). She attends church when able. *Id*.

Plaintiff returned to Dr. Ponce on April 24, 2006, complaining of discharge from her left ear and an ear ache. (Tr. 162). Dr. Ponce performed a pulmonary function test with flow loop, prescribed antibiotic ear drops, and continued Plaintiff's current medications. *Id*.

On April 29, 2006, DDS conducted a pulmonary function study on Plaintiff. (Tr. 137-45). The examiner noted Plaintiff's cooperation, comprehension, and effort were all good. *Id*. Plaintiff's observed forced vital capacity (FVC) was 2.90 L, and her observed forced expiratory volume, one second (FEV-1) was 1.71 L/sec. *Id*.

Dr. Sudhideb Mukherjee completed a Residual Functional Capacity Assessment based on a review of Plaintiff's records on June 3, 2006. (Tr. 146-53). Dr. Mukherjee noted Plaintiff had no exertional, postural, manipulative, visual, or communicative limitations established. (Tr. 147-50). Plaintiff should, however, avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. 150). Dr. Mukherjee noted Plaintiff's complaints of suffering from emphysema were credible, and her alleged limitations that she "cannot get her wind" were partially credible. (Tr. 151).

Dr. Ponce treated Plaintiff for a chronic cough and chest pain on June 13, 2006. (Tr. 158). The chest x-ray showed slight bronchitis. *Id*. Dr. Ponce stressed Plaintiff should stop smoking and prescribed an antibiotic. *Id*.

On August 8, 2006, Plaintiff sought treatment from Dr. Ponce for back pain, knee pain, shortness of breath, and stress. (Tr. 157). Dr. Ponce performed a spirometry test and noted

4

function was compromised. *Id*. He again advised Plaintiff to stop smoking. *Id*.

Dr. David S. Swan prepared a Residual Functional Capacity Assessment on October 13, 2006 after reviewing Plaintiff's records. (Tr. 176-83). Dr. Swan opined Plaintiff could occasionally lift and/or carry 50 pounds, could frequently lift and/or carry 25 pounds, could stand and/or walk for a total of about 6 hours in an 8-hour workday, and could sit for a total of about 6 hours in an 8-hour workday. (Tr. 177). He noted Plaintiff has documented COPD and her FEV1 was approximately 57% of predicted, at 1.71 L/sec. *Id*. Dr. Swan added Plaintiff could occasionally climb ropes and ladders. (Tr. 178). Dr. Swan believed Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (Tr. 180).

Plaintiff continued her treatment with Dr. Ponce, treated primarily by Dr. Ponce's Certified Nurse Practitioner, Emily Tidwell. (Tr. 294-328). She saw Ms. Tidwell approximately once per month, with additional visits for various ailments, such as tick bites and shoulder pain. *Id*. On February 1, 2007, Ms. Tidwell diagnosed Plaintiff with carpal tunnel syndrome in her wrist. (Tr. 328).

Ms. Tidwell later submitted a note to Plaintiff's attorney indicating Plaintiff was prescribed a nebulizer machine on August 10, 2007. (Tr. 364). She was to use the machine up to four times a day as needed for shortness of breath. *Id*. Plaintiff was given one refill of Albulterol when she was originally prescribed the machine, and she had requested no further refills as of August 11, 2008. *Id*.

Ms. Tidwell advised Plaintiff about weight loss beginning on January 22, 2008. (Tr. 311). She continued to work with Plaintiff on weight loss through June 2008. (Tr. 294-310).

On December 4, 2007, Plaintiff saw Dr. Steven Larson at American Orthopedics and Sports Medicine for her complaints of right knee pain. (Tr. 263-68). On December 21, Dr. Larson scheduled Plaintiff for surgery after diagnosing her with a right knee medial meniscal tear and lateral patella subulation. (Tr. 279). Plaintiff had surgery on January 9, 2008. (Tr. 275-79). At her follow-up appointment on January 18, 2008, Plaintiff stated her pain was better. (Tr. 259). Dr. Larson advised her to avoid activity which increases pain and to use the knee brace. (Tr. 261).

Plaintiff saw Dr. Larson again on April 25, 2008, complaining of left knee pain. (Tr. 252-58). Dr. Larson diagnosed a medial meniscal tear and recommended surgery after Plaintiff attempted physical therapy and took pain medication. (Tr. 235-45). Plaintiff had surgery on May 14, 2008. (Tr. 186-92, 232). At her post-operative visit on May 23, 2008, Plaintiff stated that her condition was better since her last visit. *Id*. Dr. Larson prescribed physical therapy. (Tr. 230).

Shortly after surgery, Dr. Larson completed a Medial Source Statement for Plaintiff. (Tr. 227-28). Dr. Larson stated Plaintiff was limited to lifting and/or carrying less than 10 pounds and standing and/or walking less than 2 hours in an 8-hour workday. (Tr. 227). Sitting was not affected. (Tr. 228). Dr. Larson stated Plaintiff's limitations are temporary, and he estimated Plaintiff's date of maximum medical improvement as May 14, 2009, one year after her surgery. *Id*.

At her administrative hearing, Plaintiff testified that she is separated and lives with her two adult children, ages 19 and 20. (Tr. 27). She is approximately five feet eight and one-half inches tall and, at the time of the hearing, weighed approximately 240 pounds. *Id*. She noted that she had recently gained weight following her knee problems and surgery. *Id*

Plaintiff testified that she has suffered from migraine headaches for approximately four years. (Tr. 30-31). The migraines are sometimes brought on by reading too much. (Tr. 34). She takes Maxalt[1] for her headaches, which generally provides relief. *Id*. She has problems writing and holding items due to carpal tunnel syndrome in her right upper extremity. (Tr. 31, 33).

Plaintiff stated that she suffers from breathing problems, including COPD and emphysema. (Tr. 34). She is treated for these problems by Ms. Emily Tidwell. *Id*. Plaintiff was a smoker until approximately 2006 or 2007, after she was diagnosed with COPD and emphysema. (Tr. 36). Plaintiff takes medication for her breathing problems, approximately seven pills per day. She also uses a breathing machine, apparently a nebulizer. (Tr. 34-35). She uses the nebulizer approximately three times per day. (Tr. 41). Plaintiff uses inhalers regularly. (Tr. 35).

Regarding her daily activities, Plaintiff testified she is unable to drive because of her knee problems. (Tr. 36). She clarified that she drives "maybe once" per week, if she cannot find someone to take her. (Tr. 36-37). Her daughter takes her grocery shopping and prepares most of her meals. (Tr. 36-37). Plaintiff stated she can put a Pop Tart or something in the toaster, but her daughter does the rest of the cooking. (Tr. 38). At the grocery store, Plaintiff rides in a cart. (Tr. 37). Plaintiff testified that she watches television but does not use the Internet, as she cannot afford it. *Id*. She has no hobbies. (Tr. 37-38). Plaintiff stated she is unable to make the beds because she cannot lean over, and her knees hurt too bad. (Tr. 38). She has no pets due to her emphysema. *Id*.

Plaintiff testified that she takes Albuterol, Singular, Advair, Lasix, Lortab, and Xanax.

---

[1] Plaintiff testified she takes Midex for her migraines, but the ALJ stated she takes Maxalt, which is a migraine drug. (Tr. 38).

(Tr. 38-39). Some of the medications make her drowsy, particularly the Xanax. (Tr. 42). Plaintiff receives physical therapy for her knees at the Portland Hospital. (Tr. 40). Since she had surgery, her knees are painful but somewhat relieved. *Id*. Knee pain interrupts her sleep on a regular basis. (Tr. 42). Plaintiff had to stand up at one point during her hearing to relieve her knee pain. (Tr. 43).

The Vocational Expert ("VE"), Gary Stergel, testified that Plaintiff has no past relevant work. (Tr. 45). The ALJ asked Mr. Stergel to consider a hypothetical individual Plaintiff's age with the Plaintiff's educational and work history, who could lift and carry 50 pounds occasionally and 25 pounds frequently; could sit, stand and walk for up to 6 hours in an 8-hour workday with normal breaks; should avoid climbing; and should avoid concentrated exposure to extreme temperatures, heat and cold, wetness, humidity, airborne contaminants like fumes, odors and poor ventilation situations. (Tr. 46). The ALJ asked whether there were jobs that exist in the national or regional economies this hypothetical individual could perform, and Mr. Stergel stated that there are light work jobs that individual could perform, as medium work jobs would likely not permit the environmental restrictions. (Tr. 46).

The ALJ next asked the same question regarding a second hypothetical individual who shares Plaintiff's age and educational and work history and all the same restrictions as the first hypothetical with the exception of being limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. (Tr. 47). Mr. Stergel testified that this hypothetical individual could perform unskilled light jobs, including sales attendant (2,300 in the state economy and 115,000 in the national economy), interviewer (1,400 in the state economy and 70,000 in the national economy), and information clerk (1,000 in the state economy and 60,000

in the national economy). (Tr. 47).

The ALJ finally asked Mr. Stergel whether an individual with the same hypothetical individual but with the additional restrictions of being unable to lift or carry more than 10 pounds; unable to walk or stand for more than 6 hours in an 8-hour workday; and unable to sit for more than 6 hours in an 8-hour workday. (Tr. 47-48). Mr. Stergel stated that this essentially described a sedentary exertional level of work, and the hypothetical individual could perform sedentary jobs, including data entry clerk (800 in the state economy and 43,000 in the national economy), inspector and sorter (1,000 in the state economy and 51,000 in the national economy), and credit checker (600 in the state economy and 32,000 in the national economy). *Id*.

The ALJ then asked whether Mr. Stergel's testimony would change if the last two hypothetical individuals had to use a nebulizer machine for treatments two to three times per day. (Tr. 48). Mr. Stergel testified that the individual could likely not perform the jobs he identified, as the length of the treatments would likely exceed normal work breaks. (Tr. 48-49).

On the day following the ALJ's decision, September 4, 2008, Plaintiff was apparently awarded benefits on a new application. (Docket Entry 7-1, p. 13).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

Plaintiff alleges three errors in the ALJ's decision. First, the ALJ erred by not giving proper weight to the opinion of the Plaintiff's treating physician. Second, the ALJ erred by failing to consider the functional effects of Plaintiff's obesity. Third, the Residual Functional Capacity ("RFC") conclusion reached by the ALJ is not supported by the weight of the evidence.

A.  <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the

9

administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.     Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1.     If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2.     If the claimant is not found to have an impairment which significantly limits his or

her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

C.   The ALJ Gave Proper Weight to the Opinions of Plaintiff's Treating Physician

Plaintiff specifically objects to the ALJ's consideration of Dr. Larson's medical source statement. (Tr. 227-28). An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(i)-(ii). However, if there is contrary medical

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

11

evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994).

While the ALJ is not bound by the opinions of Plaintiff's treating physicians, the ALJ is required to set forth some sufficient basis for rejecting these opinions. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In discrediting the opinion of a treating source, the ALJ must consider the nature and extent of the treatment relationship, the length of the treatment relationship and the frequency of examinations, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the specialization of the treating source, and any other factors which tend to support or to contradict the opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

In the Magistrate Judge's view, Plaintiff's objection to the ALJ's treatment of Dr. Larson is without merit. Dr. Larson's opinion, as the ALJ noted, clearly anticipated improvement in Plaintiff's condition and lessening of the medical restrictions within 12 months of surgery. (Tr. 227-28). In addition, the ALJ accepted all of Dr. Larson's restrictions with the exception of his standing restriction. (Tr. 16). The ALJ restricted Plaintiff to sitting no more than 6 hours in an 8-hour workday, which goes beyond Dr. Larson's recommendation. (Tr. 16, 227-28). The Magistrate Judge believes the ALJ correctly weighed and interpreted Dr. Larson's opinions in assessing Plaintiff's RFC. Dr. Larson clearly believed Plaintiff would reach her maximum improvement 12 months after surgery, indicating Plaintiff's restrictions would be temporary and implying her condition would improve over time. (Tr. 227-28).

Plaintiff also argues in this section that, because Plaintiff was found to be disabled on a

new application one day after the ALJ's decision, she is entitled to a disability determination on the pending application. While the evidence may be the same, the Commissioner points out that Plaintiff was 48 years old on her alleged onset date but was within two months of her 50th birthday on the date of her subsequent application. Under the medical-vocational guidelines, a claimant who is 45-49 and limited to sedentary work with a limited education and no job skills is not disabled, while the same individual would be considered disabled if she were age 50. *See* 20 C.F.R. part 404, appendix 2. On the pending application, the ALJ correctly applied the grid based on Plaintiff's age and RFC.

D.        The ALJ Properly Evaluated Plaintiff's Obesity

Plaintiff argues that, because her body mass index ("BMI") was between 35 and 39.9 during the relevant time, the ALJ failed to properly analyze the effects of her obesity in his residual functional capacity assessment. The ALJ noted Plaintiff's obesity did not "correlate with any significant degree of functional loss," although she had temporary limitations as a result of her knee surgery, and she is able to retain "adequate pulmonary reserve to perform daily activities." (Tr. 19). SSR 02-1p requires that an ALJ make an assessment regarding the effects of obesity on any mental or physical limitations.

In this case, Plaintiff has offered no evidence that indicates her obesity causes physical limitations. Plaintiff points to one assessment made by Ms. Tidwell regarding Plaintiff's risk of cardiometabolic problems as a result of her weight. (Tr. 299). Ms. Tidwell notes Plaintiff suffers from osteoarthritis as a comorbidity associated with obesity, and she also notes Plaintiff has other cardiovascular risk factors, including hypertension, family history, and high cholesterol. *Id*. Ms. Tidwell did not, however, evaluate the effects of Plaintiff's obesity on her medical conditions. *Id*.

In short, the Plaintiff offered almost no evidence of the functional consequences of her obesity. The Magistrate Judge therefore believes the ALJ properly considered Plaintiff's obesity

Plaintiff also resurrects her first argument in this section, urging that Dr. Larson's prescribed limitations did not indicate Plaintiff's level of improvement on in May 2009. Plaintiff also raises issue with the ALJ's evaluation of Plaintiff's credibility. An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. 404.1529(a)). Further, discounting the credibility of a claimant is appropriate where the ALJ finds contradictions from medical reports, claimant's other testimony, and other evidence. *Id*. Like any other factual finding, however, an ALJ's adverse credibility finding must be supported by substantial evidence. *Doud v. Commissioner*, 314 F. Supp. 2d 671, 678-79 (E.D. Mich. 2003).

In this case, the ALJ merely noted Plaintiff used a walker to ambulate to the hearing, which occurred approximately two months after her second knee surgery. (Tr. 18). The ALJ noted that Plaintiff's "symptoms had not completely resolved," but "there was a good response to treatment with regard to the knees." (Tr. 19). The ALJ doubted Plaintiff's credibility with regard the intensity, persistence and limiting effects of her pain because Dr. Larson's evaluation expected improvement, and her COPD did not prevent some routine activities. (Tr. 20). Plaintiff has offered no new evidence that Dr. Larson's evaluation was, in fact, incorrect. The Magistrate Judge therefore believes the ALJ also had substantial evidence for his assessment of Plaintiff's credibility.

E.     The RFC Conclusion Reached by the ALJ is Supported by the Weight of the Evidence

Plaintiff argues primarily that the ALJ failed to consider her allegations of carpal tunnel syndrome in evaluating her RFC. Plaintiff was diagnosed with carpal tunnel syndrome in February 2007, which the ALJ noted in his opinion. (Tr. 19, 328). The ALJ also correctly noted Plaintiff had undergone no objective testing for carpal tunnel syndrome, and her grip was reported as normal. (Tr. 19). As the Commissioner points out, Dr. Larson, Plaintiff's orthopedic surgeon, placed no limits on her use of her upper extremities in his assessment, and neither state consultant included any such limitation. (Tr. 146-53, 176-83, 227-28).

Plaintiff further argues that the ALJ did not adequately consider the limiting effect of her migraine headaches, which the ALJ found to be a severe impairment. The ALJ, however, clearly noted that Plaintiff's headaches were relieved by medication. (Tr. 19). Plaintiff in fact testified that she usually gets relief from taking Maxalt for her headaches. (Tr. 34).

In short, Plaintiff offers no medical evidence to support her proposed RFC–that she is unable to do even sedentary work. The Magistrate Judge believes the ALJ had substantial evidence for his decision. The ALJ primarily adopted the medical assessment provided by Dr. Larson and rejected those of the state consultants, due to Plaintiff's knee surgeries.

Plaintiff offers one final argument regarding the VE's testimony. She believes that the hypothetical questions posed by the ALJ were all for an individual not capable of full time substantial work, as the ALJ limited sitting, standing and walking to no more than 6 hours in an 8-hour workday. This is a complete mischaracterization of the VE's testimony. The hypothetical questions posed by the ALJ included sitting and standing restrictions of 6 hours *each* in an 8-hour workday. In other words, Plaintiff could sit for up to 6 hours in an 8-hour workday but could

15

stand for the remaining 2 hours in the day. This clearly contemplates full-time sedentary work.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 7th day of April, 2011.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge